# Rubenstein Business Law

305 Broadway, Suite 700
New York, NY 10007
Ph: 786-200-3237
Email: Drubenstein@RubensteinBusinessLaw.com
Website: www.RubensteinBusinessLaw.com

September 4, 2024

Hon. Magistrate Judge Jennifer E. Willis
United States Courthouse
40 Centre Street
New York, NY 10007

Re: **Kintetsu World Express (U.S.A.). Inc. v. Dialectic Distribution LLC**, 21-CV-9579

Dear Judge Willis:

This office represents Defendant Dialectic Distribution, LLC ("Dialectic" or "Defendant"), in connection with the above- referenced matter. The Court has asked us to provide a letter addressing whether Plaintiff must make employees of its sister companies available for deposition. We hereby provide our response below.

A. Statement of Facts

On July 23, 2023, Defendant first informed Plaintiff that Defendant sought the depositions of Olaf Gerber, Stijn Buggenhout, Rocky Zhou, and David Qi because Gerber and Buggenhout were named in Rule 26 Disclosures and Zhou and Qi were identified in discovery. See Exhibit A.

Subsequently, Defendant contacted the Plaintiff on several occasions to take the depositions of the Plaintiff's employees, but Plaintiff has refused to produce them. Defendant again raised this issue in the parties' Joint Statement to the Court filed on January 5, 2024 [Document 64]. In that Joint Statement, both parties jointly acknowledged:

> In the meantime, in Plaintiff's Rule 26 Disclosures, Kintetsu identified several witnesses located outside the United States (RA Dr. Lothar Harings and RA Max Jürgens in Germany, Olaf Gerber in Germany, and Stijn Buggenhout in Belgium). Additionally, through discovery responses, Dialectic has identified several other witnesses who it believes are located outside the United States (Tetsuhiro Matsuno, Rocky Zhou, David Qi, Takashi Miyagi). They appear to be employees of Kintetsu. Dialectic intends to seek the depositions of these witnesses.

On January, 30, 2024, Plaintiff's counsel sent an email regarding this depositions and the status of each person. Specifically, Plaintiff wrote:

1

The others are the following, with comments about their availability for deposition by remote means pursuant to mere notice but subject to agreement on mutually acceptable dates and times:

Olaf Gerber – no longer employed by KWE Deutschland and not in control of KWE USA

Stijn Buggenhout – still employed by KWE Benelux and willing to appear by remote means

Tetsuhiro Matsuno – still employed and willing to appear by remote means

Rocky Zhou – believed to still be employed by KWE Hong Kong; agreement to appear by remote means requested by not yet secured

David Qi – believed to still be employed by KWE Hong Kong; agreement to appear by remote means requested by not yet secured

Takashi Miyagi – still employed and willing to appear by remote means

See Exhibit B.

Thereafter, on February 23, 2024, Defense Counsel wrote an email to Plaintiff's counsel following up on this January 30, 2024 email and requesting dates for these witnesses so we can schedule their depositions. Plaintiff refused to provide any dates.

However, by email on February 23, 2024, Plaintiff's counsel admitted that Plaintiff had control over its sister companies because Plaintiff requested its sister companies to provide responsive documents to the Request for Production, and that these documents were being produced. Specifically, Plaintiff's counsel said "Taking your last question first, at my request KWE USA asked its European sister companies to search for relevant email. I have reviewed it and it is being processed for production." See Exhibit C. This email conclusively establishes that Plaintiff had control over its sister companies with regard to discovery of documents.

From January 2024 to July 2024, Plaintiff never raised an objection that Stijn Buggenhout, Rocky Zhou, and David Qi were not in control of KWE USA. It was only after discovery ended that Plaintiff concocted a new objection for these witnesses. The objection is undermined not only by the timeline, but also by the fact that the January 30, 2024 email agreed to produce Buggenhout without objection. Moreover, any new objection that Zhou or Qi cannot testify based on their Chinese National Status was also never raised until after the discovery end date, which demonstrates its lack of merit. Based on Plaintiff's misrepresentations, these four witnesses must be produced for deposition.

B. Legal Analysis

1. Plaintiff Must Produce the 4 Witnesses for Deposition Because They are Under Plaintiff's Control.

"Control" has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand. See Asset Value Fund, Ltd. v. The Care Group, Inc., 1997 U.S. Dist. LEXIS 17968, No. 97 Civ. 1487, 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997); Florentia

2

Contracting Corp. v. Resolution Trust Corp., 1993 U.S. Dist. LEXIS 5275, No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. April 22, 1993). This principle applies where discovery is sought from one corporation regarding discovery which are in the physical possession of another, affiliated corporation. SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469 (SDNY 2000); see generally Gerling Int'l Ins. Co. v. Commissioner of Internal Revenue, 839 F.2d 131, 140-141 (3d Cir. 1988) (discussing application of "control" rule in cases involving discovery directed at corporations related as parent and subsidiary and as sister corporations).

Courts have found control by a parent corporation over documents held by its subsidiary, by a subsidiary corporation over documents held by its parent, and by one sister corporation over documents held by another sister corporation. SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469 (SDNY 2000); Cooper Indus. v. British Aerospace Corp., 102 F.R.D. 918, 919 (S.D.N.Y. 1984), "It is obvious that the particular form of the corporate relationship does not govern whether [a corporation] controls documents." Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 131 (D. Del. 1986); see also Gerling, 839 F.2d at 140 (discussing principles involved in determining control by a subsidiary over documents held by a parent and noting that "the few cases involving sister corporations . . . follow the same pattern").

One of the circumstances which warrants a finding of control is where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity. See Gerling, 839 F.2d at 140-41 (where "agent- subsidiary can secure documents of the principal-parent to meet its own business needs . . . the courts will not permit the agent-subsidiary to deny control for purposes of discovery"); Camden Iron & Metal v. Marubeni America Corp., 138 F.R.D. 438, 441 (D.N.J. 1991) (including "demonstrated access to documents in the ordinary course of business" in list of factors to be considered in determining control); Cooper, 102 F.R.D. at 919-20 and n.2 (control by corporate litigant over documents held by parent corporation presumed because access by subsidiary corporation was required in the normal course of business).

Here, the record conclusively establishes that Plaintiff has control over its sister companies because Plaintiff admitted that it was able to direct the sister companies to produce documents on their behalf. As Plaintiff admitted on February 23, 2024, Plaintiff was able to direct the sister companies to produce documents in response to the Request for Production. Under Second District analysis, if Plaintiff can direct its sister companies to documents, then a finding of "control" has been established. SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469 (SDNY 2000); Cooper, 102 F.R.D. at 919-20. Since the Plaintiff has control over the sister companies, the 4 witnesses must be produced for deposition.

Aside from this demonstration of control, the Plaintiff also exhibited its control over the 4 witnesses because of its January 30, 2024 email.   First, the email admits that Buggenhout was "willing to appear by remote means," which means that there was no objection to producing him for deposition. If Plaintiff was able to procure his deposition in January (even if he worked for a sister company), this demonstrates that Plaintiff has sufficient "control" to produce him for deposition now.

Further, Plaintiff has control over witnesses Biggenhout, Zhou and Qi because the January 30, 2024 does not identify that they are "not in the control of KWE USA."  In that email, Plaintiff specifically states with respect to Gerber that he is "not in control of KWE USA."  Yet, none of the other witnesses were given that designation.  There was no objection by Plaintiff that the other 5 witnesses were "not in control of KWE USA."  Therefore, Plaintiff cannot hide behind this new objection 9 months later.  At minimum, Biggenhout, Zhou, and Qi must be produced for deposition.

Plaintiff is now insisting that because the witnesses work for different geographic divisions of "Kintetsu World Express" (specifically in Germany, Benelux, and China), they are not employed by Plaintiff. It is clear that the Plaintiff is trying to hinder discovery and to avoid having the depositions of these witnesses taken in violation of the Court's Order and Rule 37. Kintetsu Worldwide Express's website boasts of its many "locations." See https://www.kwe.com/local/ . These locations include Germany, Benelux, and China. All the documents in discovery show that KWE USA directed its sister companies to assist with the transfer of Defendant's products. All of these sister companies operated at the control of Plaintiff, or else the shipment of Defendant's products would never have taken place.

Since the Plaintiff has exhibited control over these witnesses, they must all be produced for deposition. Conversely, if the Court determined that these witnesses need not be produced, then Defendant's witness Owen Green should not be produced either. Owen Green is employed by Dialectic PR, LLC, a sister company of Dialectic Distribution, LLC. Since Dialectic PR, LLC is not a party in the case, Plaintiff's logic would dictate that Owen Green need not be produced either. The Court should apply its ruling equitably to all witnesses in the case.

   2. <u>Plaintiff Must Produce Gerber Even Though He No Longer Works for Plaintiff</u>

Under <u>Rule 30(b)(1) of the Federal Rules of Civil Procedure</u>, a specific officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition. "The test for a managing agent is not formulaic." <u>Boss Mfg. Co. v. Hugo Boss AG, 1999 U.S. Dist. LEXIS 133</u>, No. 97 Civ. 8495 (SHS)(MHD), 1999 WL 20828, at *3 (S.D.N.Y. Jan. 13, 1999). Rather, the question of whetherva person is a managing agent, and therefore subject to a notice of deposition, is answered pragmatically and on a fact-specific basis. See 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103, at 39 (2d ed. 1994).

"The term 'managing agent' should not be given too literal an interpretation," and "as in all matters appertaining to discovery, it is the ends of justice that are to be served." <u>Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96 (S.D.N.Y. 1968)</u>.

Courts within and without this district have adopted a "practical" approach "that focuses not only on the formal connection between the witness and the party at the time of the deposition, but also on their functional relationships." See also <u>Independent Prods. Corp. v. Loew's, Inc., 24 F.R.D. 19, 26 (S.D.N.Y. 1959)</u>(upholding deposition notices of former officers of plaintiffs despite severance of formal ties); <u>Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 351 (N. D. Ohio 1999)</u>("In any event, it is clear that the deponent need not have a formal association with the corporation to be deemed its managing agent . . . . Likewise, the deponent need not be associated with the corporation at the time of his deposition."); <u>Alcan Int'l Ltd. v. S.A. Day Mfg. Co., 176 F.R.D. 75, 79 (W.D.N.Y. 1996)</u>(requiring deposition of retired officer with unique knowledge of subject matter of litigation); <u>Calgene, Inc. v. Enzo Biochem, Inc., 1993 U.S. Dist. LEXIS 20217</u>, No. Civ. S93-0195, 1993 WL 645999, at *8 (E. D. Cal. Aug. 23, 1993)(holding that consultant and advisory board member who identified with interests of company and who had "power regarding the subject matter of the litigation" was managing agent); <u>Boston Diagnostics Dev. Corp. v. Kollsman Mfg. Co., 123 F.R.D. 415, 416 (D. Mass. 1988)</u>(ordering deposition of current employee based on his managing agent status at the time of the transactions at issue in the lawsuit); but

Finally, although the examining party bears the burden of establishing the status of the employee,

the exact nature of this burden is not perfectly clear, see Boss Mfg., 1999 U.S. Dist. LEXIS 133, 1999 WL 20828, at *4 ("It is not entirely clear whether the burden [of establishing the deponent's status] is one of production or persuasion or both."). In any event, the burden is "modest," Boss Mfg., 1999 U.S. Dist. LEXIS 133, 1999 WL 20828, at *4, and all doubts are to be resolved in favor of the examining party. Id. This approach permits discovery to proceed, while deferring until trial the ultimate question of whether the witness's testimony is binding on the corporation. Id. The witness's deposition testimony itself may well provide the best evidence of his or her status. Boss Mfg., 1999 U.S. Dist. LEXIS 133, 1999 WL 20828, at *4 ("[A] determination that the witness is a managing agent may be made provisionally . . . while awaiting the deposition testimony before determining whether the witness is an agent for purposes of binding the corporation."); Hughes Bros., Inc. v. Callanan Rd. Improvement Co., 41 F.R.D. 450, 454 (S.D.N.Y. 1967) (noting that a showing of managing agent status for the purposes of compelling a deposition "might well be overcome by the testimonial evidence produced at that very examination").

      Here, Plaintiff identified Gerber in its Amended Rule 26 Disclosures as "Olaf Gerber has information concerning efforts to obtain refunds of Duty and Taxes paid by KWE on behalf of Defendant and services provided by KWE to the Defendant." See Exhibit A. Defendant had requested the deposition of Gerber since June 2023, yet Defendant was not informed he was terminated until January 2024. It would be bad faith for the Plaintiff to identify him as an employee and witness with knowledge and then to terminate him before he has a chance to testify.

      Gerber was a Branch Manager for KWE. He clearly qualified as a Managing Agent under the Second Circuit's definition. Boss Mfg., 1999 U.S. Dist. LEXIS 133, 1999 WL 20828, at *4 At minimum, his deposition is required to be taken to determine his status. Hughes Bros., Inc. v. Callanan Rd. Improvement Co., 41 F.R.D. 450, 454 (S.D.N.Y. 1967). Therefore, his deposition must be compelled.

      Respectfully yours,

      s/David Rubenstein

Cc: All counsel of record