*Kennedy Lillis Schmidt & English*
*125 Maiden Lane*
*New York, N.Y. 10038-4753*
*Telephone: 212-430-0800*
WWW.KLSELAW.COM

Charles E. Schmidt
CSCHMIDT@KLSELAW.COM
DIRECT DIAL: 212-430-0802

September 4, 2024

Hon. Jennifer E. Willis
United States District Court
Thurgood Marshall
   United States Courthouse
40 Foley Square, Rm. 425
New York, NY 10007

          Re:   Kintetsu World Express (U.S.A.), Inc.
                v. Dialectic Distribution LLC
             Docket No.: 1:21-CV-09579 (JHR)(JW)
             Our File:  6405

Dear Judge Willis:

      We represent the plaintiff, Kintetsu World Express (U.S.A.), Inc. ("KWE-USA") in this matter. We write as directed to provide the legal authority for KWE-USA's opposition to the request of the Defendant, Dialectic Distribution LLC ("DDLLC") that the court compel it to produce four foreign witnesses for deposition.[1]

**F.R.CIV.P. 30: NATURAL PERSON DEPONENTS**

      We start with the proposition that, under F.R.Civ.P. 30, "If the individual designated in a notice of deposition is not an officer, director, or managing agent, the deposition must proceed as for an ordinary nonparty witness, and the deponent cannot speak on behalf of the corporation. . . . [S]ince only a party may be compelled to give testimony pursuant to a simple notice of deposition, it is important to determine whether a person is an officer, director, or managing agent of a corporate party or other entity. If not deposed as a representative of the corporate party, the witness must be subpoenaed." 7 Moore's Federal Practice - Civil § 30.03 (2024). In this case, the Hague

---

[1] The issue arises as a result of the professed "intention" of the defendant, Dialectic Distribution LLC ("DDLLC"), to seek depositions of the following four individuals: Olaf Gerber, Stijn Buggenhout, Rocky Zhou and David Qi. Messrs. Gerber and Buggenhout were identified by KWE-USA as employees, respectively of Kintetsu World Express (Deutschland) GmbH ("KWE-D") and Kintetsu World Express (Benelux) B.V. ("KWE-B") and their address particulars in Germany and Belgium were provided to defendant in plaintiff's First Supplemental F.R.Civ.P. 26 Disclosures in June 2023. Qi and Zhou are employed by Kintetsu World Express (China) Co., Ltd. ("KWE-C"). Finally, KWE-USA's corporate counsel provided a declaration attesting to these facts on July 2, 2024 as requested by opposing counsel, and further stating that KWE-USA does not own or control KWE-D, KWE-B, or KWE-C. Exhibit 1.

*Kennedy Lillis Schmidt & English*

Hon. Jennifer E. Willis

September 4, 2024
Page 2

Convention would provide the corresponding means of compulsion.

"[I]n cases involving organizational parties, courts have held that such organizations are not required 'to produce persons for deposition who are merely alleged to be in the party's control.' Such witnesses may be subpoenaed, assuming that they are within the subpoena power of the relevant court. If they are located abroad, they often may be examined pursuant to letters rogatory or other means." *Chevron Corp. v. Salazar*, 275 F.R.D. 422 (S.D.N.Y. 2011). See also, *SEC v. Laura*, 2020 U.S. Dist. LEXIS 157109, at *4 (E.D.N.Y. Aug. 30, 2020)(collecting cases). The *Laura* case highlights the point that the defendant was not left without a means to pursue such depositions if it so chose. "For example, Mr. Nuerk 'can be deposed under subpoena' if served while he is subject to the Court's jurisdiction. . . . 'If [Mr Nuerk remains] located abroad,' Defendants may seek his examination 'pursuant to letters rogatory or other means.' *Chevron Corp.*, 275 F.R.D. at 427; see *Rensselaer Polytechnic Inst. v. Apple Inc.*, 2014 U.S. Dist. LEXIS 192505, 2014 WL 12586845, at *2 (N.D.N.Y. Apr. 21, 2014)." *SEC v. Laura*, 2020 U.S. Dist. LEXIS 157109, at *6 (E.D.N.Y. Aug. 30, 2020).

**MANAGING AGENT STATUS**

The four individuals were and are not officers or directors of KWE-USA. See Exhibit 1. In determining whether a person is a "managing agent" of a party, the courts in this district have considered five factors:

> 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation.

*Grain D'Or LLC v. Wizman*, No. 21-cv-10652 (LJL), 2023 U.S. Dist. LEXIS 29636, at *7-8 (S.D.N.Y. Feb. 22, 2023). *See also, Boss Mfg. Co. v. Hugo Boss AG*, 97 Civ. 8495 (SHS)(MHD), 1999 U.S. Dist. LEXIS 133 (S.D.N.Y. Jan. 11, 1999).

In this case, DDLLC hired KWE-USA to arrange transportation of DDLLC's goods from Asia to the US and Europe. The essential dispute as framed by the complaint is DDLLC's failure to pay for those services. The alleged defenses and claims as framed in the answer and counterclaim are, in essence, KWE-USA's overcharges for services provided to the defendant; KWE-USA's failure to employ proper currency conversion rates to the foreign invoices from KWE-C, KWE-D and KWE-B; and a failure by KWE-USA to mitigate its damages. **All of these actions are ascribed to KWE-USA.**

*Kennedy Lillis Schmidt & English*  

Hon. Jennifer E. Willis

September 4, 2024  
Page 3

---

Beginning in June 2023 and continuing on a rolling basis, KWE-USA provided over 32,000 pages of document discovery. We submit that the discovery shows the four intended deponents did not negotiate rates of charges with DDLLC, nor prepare any invoices addressed to DDLLC, nor undertake any currency conversions of the foreign invoices addressed to KWE-USA, nor decide whether or not KWE-USA should have attempted some disposition of the Chicago Masks (see Answer and Counterclaim, ECF Doc. 25, pp. 8 -26). The four witnesses had nothing to do with

There are no known messages sent *by* either Mr. Qi or Mr. Zhou. In fact, Messrs. Qi and Zhou were not even addressees, but rather mere copy recipients, of email messages concerning the state of execution of DDLLC's shipping instructions. One such email message is attached. Exhibit 2. It is nothing more than a discussion string concerning the status of some DDLLC shipments. Note that Kintetsu Logistics (Shenzhen) Co., Ltd.'s representative pointed out KWE-USA's control over the DDLLC shipments. ("We've got in touch with KWEUS PIC/Ben.Farina@am.kwe.com who is control tower for Dialectic shipments." Exh. 2, p KWE-00055.) Notably, DDLLC's principal, Mr. Zeltzer, was the sender of some of the messages in the string, demonstrating his knowledge of and dealings with various Chinese personnel of Kintetsu Logistics (Shenzhen) Co., Ltd. and Kintetsu World Express (Guangzhou) Limited as long ago as April 2020.[2]

In answers to interrogatories, DDLLC has stated that Messrs. Qi and Zhou "[Have] knowledge concerning mask shipments and [were] copied on the April 17, 2020 email from Tetsuhiro Matsuno."[3] Mere possession of knowledge about the *shipments* that resulted in the disputed *charges* does not meet the standard requiring their treatment as managing agents of KWE-USA.

Mr. Buggenhout was the Assistant Branch Manager of Kintetsu World Express (Benelux) B.V. based in Brussels at the company's airport office. He was engaged in facilitating the delivery of DDLLC's China/Belgium shipments. A typical message depicting this is attached as Exhibit 3, of which he was the sender and DDLLC's Mr. Green one of the addressees.

Mr. Gerber was the Branch Manager, Hamburg Airfreight, of Kintetsu World Express (Deutschland) GmbH based in Hamburg at the company's airport office. He is no longer employed by that company. While employed, he participated in facilitation of delivery of goods in DDLLC's China/Germany trade. Mr. Gerber also acted as a local intermediary between KWE-USA, DDLLC, and one of DDLLC's customers, Happy Yours U.G., in connection with attempts to recover a refund of German customs duty and VAT advanced by KWE-USA on behalf of DDLLC for the Happy Yours imports. An exemplar email string, on which DDLLC's Zachary Zeltzer was both a sender and an addressee, is attached as Exhibit 4. Observe again that the message notes that Mr. Gerber reported to KWE-USA's Ben Farina.

---

[2] In addition, deposing Messrs. Qi and Zhou presents the problem of the Chinese law prohibition discussed in footnote 1 of ECF Doc. 73.

[3] DDLLC has not produced this email as part of its Rule 26 production or otherwise; KWE-USA has not located the email or included it in its voluminous production.

*Kennedy Lillis Schmidt & English*

Hon. Jennifer E. Willis

September 4, 2024
Page 4

---

In *Boss Mfg.*, the plaintiff sought depositions of four employees of the defendant who were located in Germany. The defendant admitted that one of the four was a "managing agent" but argued that he should be deposed in Germany. Another, no longer employed by the defendant, was said not to be a managing agent at the time of the relevant transactions but was willing to waive the Hague Convention procedure and appear in Germany. Defendant denied the managing agent status of the remaining two noting that neither had the authority to bind the defendant in its dealing with third parties.

Concerning the former employee, the court observed, "As a general matter, a corporation cannot be required to produce a former officer or agent for deposition since it does not have control over him." *Boss Mfg. Co. v. Hugo Boss AG*, 97 Civ. 8495 (SHS)(MHD), 1999 U.S. Dist. LEXIS 133, at *6 (S.D.N.Y. Jan. 11, 1999).

The *Boss* court enumerated several tests applied to determine managing agent status:

> To qualify as a managing agent, it is generally said that the individual "should possess general powers to exercise judgment and discretion in corporate matters. . . . [,] should be a person who can be relied upon to give testimony, at the employer's request, in response to the demand of the examining party. . . . [and] should be a person who can be expected to identify with the interests of the corporation." 7 Moore, *supra*, § 30.03[2] at 30-20. In addition, a number of courts in this district have articulated as separate considerations whether there are other persons "in positions of higher authority than the individual designated in the area for which information is sought by the deposition" and "the general responsibilities of the individual respecting the matters involved in the litigation."

*Boss Mfg. Co. v. Hugo Boss AG*, 1999 U.S. Dist. LEXIS 133, at *9. DDLLC has not attempted through discovery or otherwise to show that Messrs. Gerber, Buggenhout, Zhou or Qi, have any "general powers to exercise judgment and discretion" in **KWE-USA's** corporate matters. KWE-USA has not held them out in this litigation as having such powers. As KWE-USA does not employ them, they cannot be "relied upon to give testimony, at . . . [KWE-USA's] . . . request."

Finally, there are persons employed by KWE-USA with greater authority over the issues relevant to this case than the four foreign nationals. KWE-USA's Ben Farina was "the control tower" for DDLLC's business, and the foreign companies providing elements of the services for which DDLLC engaged KWE-USA always reported back to him.

*Boss Mfg.* noted that the burden to demonstrate managing agent status is on the party seeking the deposition and noted that "Knowledge of the evidentiary facts alone is not tantamount to possessing the attributes of a managing agent . . ." *Boss Mfg. Co. v. Hugo Boss AG*, 1999 U.S. Dist. LEXIS 133, at *12. "[T]he examining party has the burden of providing enough evidence to show that there is at least a close question whether the proposed deponent is a managing agent." *United States v. Afram Lines, Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

Here DDLLC has presented no such evidence and never sought any. Rather, DDLLC relied on a broad brush repetition of the incantation "Kintetsu World Express" to justify its demand that KWE-USA produce witnesses employed by KWE-C, KWE-B and KWE-D, ignoring the separate corporate entities involved in the performance of the transportation services it hired KWE-USA to arrange. This mere incantation of the words "Kintetsu World Express" does not constitute evidence that employees of KWE-C, KWE-B, or KWE-D possessed the requisite attributes of managing agents of KWE-USA. After disclosure of tens of thousands of pages of documents, we respectfully suggest that no such evidence exists.

The four individuals were not then and are not now employed by KWE-USA. There is no basis to suggest that they had any authority "to exercise judgment and discretion in [KWE-USA's] corporate matters" or had "general responsibilities . . . respecting the matters involved in the litigation." As non-employees, there is no basis to find that they "can be relied upon to give testimony, at [KWE-USA's] request, in response to the demands of the examining party." Substantial evidence has been produced in discovery that there are persons employed by KWE-USA in "higher authority than the individual designated" with knowledge of "the information [] sought by the examination."

**OWEN GREEN**

KWE-USA served notice to take the deposition of Owen Green in January 2024. DDLLC never objected. At the conference on August 21, DDLLC for the first time stated that Mr. Green was employed by "Dialectic PR." Review of documents does not show that he was ever identified as an employee of "Dialectic PR." He was shown on DDLLC's website as part of a single team. Exhibit 5. He gave KWE-USA directions on behalf of DDLLC. Exemplar email, Exhibit 6. There is no apparent basis to sustain a late, and vaguely expressed, objection to KWE-USA's notice.

---

Accordingly, KWE-USA submits Mr. Green should be compelled to appear for a deposition as noticed. Further, the four individuals employed overseas by KWE-USA's subcontractors never were, and are not now, its managing agents, and KWE-USA should not be compelled to produce them. If the Court determines to indulge DDLLC at this point in these proceedings, DDLLC's remedy is to seek their testimony pursuant to the Hague Convention.

Very truly yours,

KENNEDY LILLIS SCHMIDT & ENGLISH

By: *[signature]*

Charles E. Schmidt

CES/
X:\6405_LTC21(SS)(V4).DOCX